974

**In re AULL et al.**

**Patent Appeal No. 3275.**

Court of Customs and Patent Appeals.
April 16, 1934.

Robert Starr Allyn, of New York City, for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

## BLAND, Associate Judge.

All of appellants' claims were rejected by the Primary Examiner of the United States Patent Office, and the Board of Appeals of said office affirmed the decision of the Examiner. Appellant has appealed here from the decision of the Board of Appeals.

Claim 1 is illustrative of the eleven appealed claims, and follows: "1. In a tuner for a cascade vacuum tube radio frequency amplifier, a variable radio frequency transformer system with common operating means consisting of a plurality of tunable transformers each composed of a primary winding of fixed self inductance, a secondary winding of variable inductance, said windings being so associated that their mutual inductance increases simultaneously with said secondary inductance, said transformers constituting the only variable tuning means and being mechanically connected in such a manner that their electrical periods determined by their effective inductances and associated capacities and their mutual inductances each vary equally and simultaneously as said operating means is actuated."

Appellants' claimed invention relates to a multistage tuner for radio receivers. Two forms of the alleged invention are shown. The Board of Appeals in describing the invention stated: "Applicants state in their brief that the claims relate to 'tuning means for multi-stage radio frequency amplifiers in which all of the capacity and inductance elements of the various stages are of fixed or predetermined value except one factor or element in each stage which is variable and all of these variables are so connected that they are made equally and simultaneously varied to simultaneously control the tuning of all the stages.'"

The references relied upon are: Rice, 1,-334,118, March 16, 1920; Hoxie, 1,382,914, June 28, 1921; Round, 1,556,129, Oct. 6, 1925; Proctor, 1,555,254, Sept. 29, 1925; "Wireless Age," May, 1920, pp. 13, 14.

The Board discussed only the "Wireless Age" reference and affirmed the reasons of rejection of the Examiner. The board said:

"The examiner relies for anticipation mainly upon the three-tube circuit shown in Fig. 6, pages 13 and 14, of the 'Wireless Age' published under date of May 1920. In this publication there is disclosed a cascade tuned radio frequency transformer system including a plurality of radio frequency transformers each comprising an adjustable primary and secondary together with means

—'a switch which changes the values of the inductances $L_3$, $L_4$, $L_5$, $L_6$, simultaneously' —for operating the common tuning means. In this circuit arrangement of the prior art the capacities are adjustable as well as the windings of each transformer. The applicants contend that it would be necessary to adjust all these factors in order to tune the system to the desired frequency; or, in the alternative, that these various tuning factors of the reference would need to possess different coordinated values if all but one in each stage were to remain fixed. These factors of inductance and capacity and to some extent resistance always, however, have to be computed and proportioned according to the well known factors of resonance to produce a system of circuits having a period of a desired frequency. When this is done a variation of one of these factors varies the period of the circuit. It would seem all applicants did, so far as the claims before us recite, was to eliminate the adjustable features of the multi-stage radio frequency receiving system of the reference save as to the secondaries of the transformers $L_4$ and $L_6$ and provide a common operating means for simultaneously and equally adjusting them. Eliminating all save one in each stage of these various adjustments of the publication and eliminating their function certainly involved, as we view the matter, nothing unobvious or inventive.

"The other features of separating the transformer by distances greater than their coil diameters, electrostatically shielding one coupling means from another etc. are, for the reasons set forth quite fully by the examiner in his statement, deemed by us not to carry merit into the claims. After a careful consideration of the record we are satisfied the examiner's conclusions are sound."

The Examiner rejected claim 1 as being met by the "Wireless Age" publication, in figure 6 of which a cascade amplifier system, having tuning means consisting of variable frequency transformers, is shown. It is stated in that reference that the transformers may be adjusted simultaneously by unicontrol means. The Examiner held that there could be no invention involved in not varying the primaries of these transformers and in leaving the variable condensers unchanged, so that tuning would be accomplished by varying only the secondaries; that in effect appellants would be merely eliminating apparatus and therewith its function. Concerning this claim, the Examiner also said that the Proctor reference shows several stages of tuning by inductances which are uncontrolled, so that it is not invention to select transformers that will act together in a unicontrol.

Claim 2 was rejected by the Examiner on the references and reasons applied to claim 1 and for the following additional reason: "The 'Wireless Age' publication shows a common electrical connection between the moving elements of the coupling means, this common connection being at a low radio frequency potential point."

Claims 3 and 5 were rejected by the Examiner for the same reasons as was claim 1.

Claim 6 was rejected by the Examiner on the same grounds as claim 1, and in addition the Examiner said: "It is old engineering knowledge and practice to reduce or minimize reaction between the fields of different transformers by many and various methods, of which distance separation is an obvious one." The Examiner in his rejection of this claim refers to the reference Hoxie, but we do not regard it as important to set out all of the language used.

Claims 8 and 9 were rejected by the Examiner on the references applied to claim 1, and further the Examiner said: " * * * In 'Wireless Age' the self-inductance of the secondary windings is greater than that of the primary windings, it being stated in column 2 of page 13 that the grid circuit inductance, or secondary, has more turns than the plate circuit inductance, or primary, and the self-inductance of a coil being greater, the greater number of turns it has, everything else being constant."

Claim 10 was rejected by the Examiner on the "Wireless Age" publication for the same reasons as claims 2 and 6.

Claim 11 was rejected by the Examiner on the "Wireless Age" publication in the same way as were claims 2 and 6, and with reference to the shielding means referred to in claim 11 the Examiner stated that it was shown to be old in Rice, Hoxie, and Round to provide the transformers shown in the "Wireless Age" with shielding means.

Claims 14 and 15 were rejected on "Wireless Age" in view of Rice, Hoxie, or Round.

The main reference relied upon by the Board is the "Wireless Age" publication under date of May, 1920. In this publication, the author discloses a cascade, tuned radio frequency transformer system which includes a plurality of radio frequency transformers each including an adjustable primary and secondary together with a switch

which changes the values of the inductances simultaneously. This switch is for operating the common tuning means. The Board in discussing this reference said (again quoting part of the above): "* * * Eliminating all save one in each stage of these various adjustments of the publication and eliminating their function certainly involved, as we view the matter, nothing unobvious or inventive."

We have considered the applicability of the other references as did the Board, and we are of the opinion that what appellants claim to be inventive subject-matter in the rejected claims over the "Wireless Age" reference is either shown in the other references or is obvious and uninventive, and the decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.